**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JERI L. DIESINGER,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 09-1237** |
| | : | |
| **WEST PIKELAND TWP.,** | : | |
| **Defendant** | : | |

# MEMORANDUM

**STENGEL, J.** **September 2, 2009**

Jeri Diesinger, a former employee of West Pikeland Township, claims she was wrongfully terminated in retaliation for certain public statements she made regarding the township's financial situation. West Pikeland has moved to dismiss. The issues are whether Ms. Diesinger's statements are protected under the First Amendment of the United States Constitution and whether the Pennsylvania Constitution creates a private cause of action for alleged violations of the right to free expression. I will grant the motion and dismiss the complaint.

## I. Background

Jeri Diesinger was employed by West Pikeland Township from on or about March 5, 2007 to on or about October 31, 2008. (Compl. ¶ 7.) She held the position of Township Manager. (Id. ¶ 8.) Her job performance was excellent, and she fulfilled all of her employment duties and obligations. (Id.)

In June 2007, a local youth association sent a letter to the township requesting a

soccer field for the township's youth. (Id. ¶ 9.) In November 2007, the township's Board of Supervisors resolved to build a new soccer field. (Id. ¶ 10.) As Township Manager, Diesinger's duties included overseeing the township's finances and ensuring the decision to build was implemented. (Id. ¶ 11.)

In January 2008, three new board members were elected to the Board of Supervisors. (Id. ¶ 12.) These new members halted the building of the soccer field because they wanted to look into the project and get more information from the youth association. (Id. ¶ 13.)

Ms. Diesinger alleges she was fired for certain statements she made during public meetings of the Board of Supervisors. The first occurred on or about July 21, 2008. Three members of the township's Finance Review Committee stated (falsely, according to Plaintiff) to the Board that the township lacked sufficient funds to build the requested soccer field. (Id. ¶ 14.) Ms. Diesigner corrected the misstatement and informed the Board that there were sufficient funds to proceed with construction.

The second incident occurred at another public meeting of the Board of Supervisors held on or about August 18, 2008. Certain Finance Review Committee members had again falsely represented the township's ability to build the soccer field. (Id. ¶ 16.) Ms. Diesinger responded by characterizing the Finance Review Committee's assessment as inaccurate, and she "stated her intention to provide the [township] with an accurate financial report in order to demonstrate that the [township] indeed had sufficient

funds in the budget to build the requested field." (Id. ¶ 17.)

On or about August 27, 2008, Ms. Diesinger met with members of the Finance Review Committee and a member of the Board to discuss the township's financial situation and to show that sufficient funds existed. (Id. ¶ 18.) On October 31, 2008, Diesinger was "abruptly" terminated from her position. (Id. ¶ 19.) She was told the Board decided to make a change because they "had some complaints from some of the committees." (Id.)

On March 20, 2009, Ms. Diesinger filed her complaint against West Pikeland. It contains two counts, which are claims for violations of her right to free speech as protected by the United States and Pennsylvania Constitutions. West Pikeland moved to dismiss on the grounds that Diesinger's speech was not protected by the First Amendment and the Pennsylvania Constitution does not provide a private cause of action. (See Mem. to Dismiss (Document #7) at 4–6.) West Pikeland also moves to dismiss any request for punitive damages. (See id. at 6.)

**II. Standard of review**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic

Corp. v. Twombly, 550 US 544, 127 S.Ct. 1955, 1965 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id. See also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 127 S.Ct. at 1969. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965)).

## III. Discussion

### A. First Amendment claim

A public employee's speech is protected under the First Amendment when (1) it was made in the employee's capacity as a citizen, (2) it involved a matter of public concern, and (3) the government employer had no adequate justification for treating the employee differently from other citizens. Hill v. Borough of Kutztown, 455 F.3d 225, 241–42 (3d Cir. 2006) (citing Garcetti v. Ceballos, 547 U.S. 410 (2006)). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). One reason is that government employees are in a unique position to "express views that contravene governmental policies or impair the proper performance of governmental functions." Id. at 419. Consequently, if the government, as an employer, were unable to exercise some degree of control over the employees' speech, "there would be little chance for the efficient provision of public services." Id. at 418.

I will grant the motion as to this part because the count fails to state a cause of action for retaliatory discharge under the First Amendment. The complaint unequivocally establishes that Diesinger, as Township Manager, had "a duty and responsibility to oversee the . . . Township's finances and to ensure that the . . . Township implemented the decision to build [the soccer] field." (Compl. ¶ 11.) On two occasions, Diesinger spoke

up to defend the field proposal and to state that there were sufficient funds in the township's budget to proceed with construction. (Id. ¶¶ 14–17.) Given these facts, it is not clear how Diesinger can claim these statements were not made in her official capacity: her duties included ensuring the township implemented its decision to build the fields, and when potentially harmful information was presented to the Board, she spoke to assure the Board that the project could and should be completed within the current budget.

This is distinguishable from the situation seen in Pickering v. Board of Ed. of Twp. High Sch. Dist. 205, Will Cty., 391 U.S. 563 (1968). In that case, the Court considered whether public school teachers could speak freely on education funding and allocation without fear of being discharged in retaliation, and held that the First Amendment does protect some expressions on subject matters relating to a speaker's job. Id. at 572–73. An important consideration appears to have been the fact that "[the speaker's] employment [was] only tangentially and insubstantially involved in the subject matter of the public communication made . . . ." Id. at 574; see also Garcetti, 547 U.S. at 421. Here, Diesinger's statements were wholly and substantially linked with her employment. Because one of her duties was to make sure the Board built the proposed fields, Diesinger's comments correcting the alleged misstatements regarding the availability of necessary funds go beyond merely referencing the subject matter of her job. They directly implicate her responsibilities as township manager.

Diesinger counters she was fired for making her statements publicly. She makes the distinction that she had no duty to inform the public of township finances, and that her duties ran only to the Board. (Pl.'s Resp. at 8.) Because her statements could have been made behind closed doors to the Board alone, it was the public nature of her statements that led to the retaliatory discharge. (Id.)

This argument is unpersuasive for two reasons. First, it is contradicted by the complaint. Paragraph 20 reads, "Plaintiff Diesinger believes and avers . . . that her employment was in fact terminated in retaliation for expressing her opinion on a matter of public concern, namely her opposition to Defendant Township's statement that constructing an athletic field was a financial impossibility." (Compl. ¶ 20.) As stated, the suggested reason for termination was not the forum, but the speech. Indeed, the tenor of the complaint's recitation of the facts indicates Diesinger believed the problem was the fact she made the statements in question at all, not that they were made at a community meeting open to the general public. (See generally id. ¶¶ 7–20 (describing how Diesinger spoke at two Board meetings to correct misstatements regarding the township budget and later met privately with members of the Board and the Finance Review Committee to discuss the budgetary issues surrounding the proposed soccer fields).)

Second, that the statements were made publicly provides no greater protections under the First Amendment. Diesinger presents no case law or authority suggesting that the First Amendment's protections for a public employee's speech made in an official

capacity are greater when such speech is made publicly. Ms. Diesinger's statements concerned her duties as township manager; whether they were made publicly or privately does not alter that crucial fact. Consequently, that Ms. Diesinger spoke publicly is a distinction of no moment for First Amendment retaliation purposes. See Garcetti, 547 U.S. at 421; Foraker v. Chaffinch, 501 F.3d 231, 241–43 (3d Cir. 2007) (stating that a worker's choice of employment does not foreclose his opportunity to engage in public discourse, but such speech will not be given constitutional protection where it is linked to the employee's duties or responsibilities). She spoke in her official capacity, and the township was permitted to take reasonable measures to protect its interests as her employer.

Because Ms. Diesinger was speaking in her capacity as an employee of the township, the inquiry is ended and there is no reason to consider the remaining factors of the discharge claim. For these reasons, I will dismiss this claim.

**B. Article 1, Section 7 of the Pennsylvania Constitution**

There is no independent basis of federal jurisdiction for this state law claim. The claim was brought pursuant to 28 U.S.C. § 1367, which grants supplemental jurisdiction to other claims "so related to the claims in action within such original jurisdiction that they form part of the same case or controversy." Subsection (c) grants the district court discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction. As this case is still in the early stages of litigation

and there is no foreseeable prejudice to the parties if this claim were dismissed, I decline to exercise jurisdiction over this claim.

**IV. Conclusion**

For the foregoing reasons, I will grant the motion and dismiss the complaint. An appropriate Order follows.